ADINA L. MARDENBOROUGH and
HARRY MARDENBOROUGH, Plaintiffs

v.

GOVERNMENT OF THE VIRGIN ISLANDS,

DEPARTMENT OF EDUCATION, et al. Defendants and

Third-Party Plaintiffs

v.

THE FLUOR CORPORATION, LTD., Third-Party Defendant

# Civil No. 95-1964

# District Court of the Virgin Islands

Div. of St. Thomas and St. John

# November 6, 1964

*See, also, 235 F.Supp. 468*

ALEXANDER A. FARRELLY, Assistant United States Attorney, Charlotte Amalie, Virgin Islands, *for third-party plaintiffs*

WILLIAM W. BAILEY, Charlotte Amalie, St. Thomas, Virgin Islands, *for third-party defendant*

GORDON, *District Judge*

This is an action brought by the plaintiffs against the defendants wherein the plaintiff, Adina Mardenborough, alleges that while on the premises of the Charlotte Amalie High School Auditorium attending a concert she fell and suffered certain injuries. The negligence which the plaintiff alleges is that the construction, by its very nature, to wit: a sloping floor, was dangerous, therefore the defendant Government of the Virgin Islands, the owner of the building, should be held liable.

The defendant, Government of the Virgin Islands, on July 16, 1964 filed a third party complaint against the Fluor Corporation. In its complaint, the Government alleges that: the third party defendant, the Fluor Corpora-

tion, Ltd., was a corporation organized under the laws of the State of California; it was given permission to conduct business in the municipality of St. Thomas and St. John[1] as a foreign corporation beginning in 1953; it consented to be sued in the Courts of the Virgin Islands upon all causes of action arising against it in the Virgin Islands; it, as an independent contractor, did erect, and construct, the building in which the plaintiff was injured; and it was negligent in the construction of said building.

The third party defendant has filed a motion to quash the service of process. Briefs in support and in opposition to the motion were filed and upon agreement by the parties the motion was submitted for decision upon the briefs and supporting documents. This motion to quash the service of process is the only question the Court has to decide at this time and what will follow is the Court's opinion only as to the service of process.

The summons and third party complaint were duly served upon George H. T. Dudley as resident agent for the Fluor Corporation, Ltd., and upon the Government Secretary[2] on July 17, 1964, and the return of service was made on the same day by the United States Marshal.

The question involved herein is whether the third party defendant was properly served through substitute service of process upon the Government Secretary and the resident agent in the Virgin Islands. A background statement of the defendant's activities in the Virgin Islands and a factual discussion of the service of process would be most helpful.

On September 8, 1953 the Fluor Corporation through its president consented in writing to be sued in the courts of

---

[1] The Organic Act of 1936 [Act of Congress, June 22, 1936, Ch. 699, 49 Stat. 1807] gave to the municipality of St. Thomas and St. John the power to enact laws [§ 6].

[2] Section 12 of The Revised Organic Act of 1954 [Act of Congress, July 22, 1954, Ch. 558, 68 Stat. 497] explains the duties of the Government Secretary. Service was properly made upon the Government Secretary pursuant to 13 Virgin Islands Code § 348.

the Virgin Islands upon all causes of action arising in the Virgin Islands and that service of process was to be made upon George H. T. Dudley as resident agent. Work on the Charlotte Amalie High School commenced sometime in the year 1953 and was completed in the year 1955. The Government was notified by letter from the construction manager of the Fluor Corporation that all the work was completed. By a letter dated April 9, 1958 the Fluor Corporation advised the Government Secretary that:

"This is to advise that since the Fluor Corporation, Ltd., has had no operations in the Virgin Islands since 1955 and inasmuch as no assets are presently situated there, we feel that the filing of the Annual Report will serve your office no useful purpose at this time. Consequently, no report will be filed unless we are advised to the contrary."

The Government argues that since the third party defendant never withdrew the consent to be sued or having revoked the same, the consent to substitute service of process remains in full force and effect. Furthermore, the Government contends that there has been no withdrawal from the Virgin Islands pursuant to 13 Virgin Islands Code § 407(a)(1) and supports this by an affidavit of the Government Secretary, Cyril E. King.

"§ 407. (a) Any foreign corporation which shall have qualified to do business in the Virgin Islands under the provisions of section 401 of this title may surrender its authority to do business in the Virgin Islands and may withdraw there from by filing with the Government Secretary a—

　　(1) certificate signed by its president or a vice-president and under its corporate seal attested by its secretary or an assistant secretary setting forth (A) that it surrenders its authority to transact business in the Virgin Islands and withdraws therefrom; and (B) the address to which the Government Secretary may mail any process against the corporation that may be served upon it; . . . ."

The Court is of the opinion that the Fluor Corporation substantially complied with 13 Virgin Islands Code

60

§ 407(a)(1) by the letter dated April 9, 1958. If the Government would have contested such a withdrawal and sent a reply as requested by the Fluor Corporation to the effect that this letter did not constitute withdrawal, then the Government's contention would be on a more tenable ground. The Government cannot argue that they were never put on notice of the Fluor Corporation's withdrawal from doing business in the Virgin Islands.

The Government further argues that with respect to factual withdrawal pursuant to 13 Virgin Islands Code § 533, there is no basis for dependence by the Fluor Corporation because the section is not self executing. It goes on in its argument that as a condition for revocation, two steps are necessary: (1) The Commissioner of Finance has to notify the Government Secretary that the foreign corporation has not paid its annual franchise tax; and (2) upon such notification, the Government Secretary shall revoke such authority to do business. The logical conclusion to the Government's argument is that if 13 Virgin Islands Code § 533 is not followed by the Government Secretary, then any and all corporations who have not paid their franchise tax can have the Sword of Damocles held over their heads whether they are doing business or are defunct.

▇ The Court agrees with the Government that 13 Virgin Islands Code § 533(c)(1), (2) is not self executing, but that affirmative steps must be taken by the Government Secretary to revoke the corporation's authority to do business in the Virgin Islands. Yet, the law directs the Commissioner of Finance to notify the Government Secretary that the franchise tax has not been paid. If the Government does not see fit to follow the laws of the Virgin Islands, the Court will not penalize the innocent party.

The Court would like to discuss the law pertaining to substitute service of process as is generally held in the United States.

61

The doctrine of Pennoyer v. Neff[3] established for a period of sixty-eight years that the due process clause of the Fourteenth Amendment was violated when a court rendered personal judgment against a nonresident defendant without acquiring jurisdiction over him, and that as a matter of due process it could not acquire jurisdiction by mere service of process outside the forum. It was not until International Shoe Company v. Washington[4] that a new or extended basis for jurisdiction was established by the Supreme Court. The trend has been away from the emphasis on territorial limitations and toward the emphasis on providing adequate notice and an opportunity to be heard; from the court with immediate power over the defendant toward the court in which both parties can most conveniently settle their dispute.

The traditional theory underlying jurisdiction over the individual—presence, consent, and domicile—and over the corporation—physical presence and implied consent—was not sufficient to meet the advances of the American economic structure. The population explosion and the resultant mobility of the populace have increased the problems of jurisdiction over foreign corporations and individuals. The Court in International Shoe saw the need to revamp the jurisdictional theory and tried to lay down some foundation upon which the states could expand their jurisdiction to meet the needs of our modern economy.

In International Shoe Company v. Washington[5] the appellant shoe company was sued in a state court for unpaid unemployment compensation contributions. It challenged the court's jurisdiction over its person, stating as its grounds that its presence in the state was not sufficient to constitute "doing business" in the state. The Supreme

---

[3] 95 U.S. 714 (1877).
[4] 326 U.S. 310 (1945).
[5] 326 U.S. 310.

Court of Washington was of the opinion that the regular and systematic solicitation of orders in the state by the appellant's salesmen, resulting in a continuous flow of appellant's products, was sufficient to constitute "doing business" in the state so as to make it subject to suit in its courts. The shoe company appealed to the United States Supreme Court. The United States Supreme Court affirmed the decision of Washington's highest court. Mr. Justice Stone, in his majority opinion, discarded the old legal fictions of presence and consent and promulgated a new standard. The old theory of presence constituting sufficient contacts was based upon the quantity of the corporation's activity in the state. The new basis for jurisdiction established by Mr. Justice Stone depends mainly upon the circumstances of the individual case.

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations."[6]

The foundation upon which the Court's decision rested was the fact that the activities of the shoe company were continuous and resulted in a large volume of interstate business.

"The obligation which is here sued upon arose out of those very activities. It is evident that these operations established sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which appellant has incurred there."[7]

The broad test which was stated in the International Shoe case implies that courts can constitutionally exercise

[6] 326 U.S. 310, 319.
[7] 326 U.S. 310.

more freedom in subjecting foreign corporations to in personam actions than formerly.[8] From this foundation many courts have exercised this new found freedom for the establishment of jurisdiction over the corporations and individuals.

Insofar as a tort being committed by a corporation which carried on its activities within the state, the corporation would be susceptible to the state's jurisdiction. This has been a long established rule. The International Shoe case has extended the power of the state to two basic situations: where the corporation carried on isolated activities in the state[9] and where the corporation carried on no activity within the state, but committed a negligent act outside the state which resulted in injury to the plaintiff within the state.[10]

Smyth v. Twin City Improvement Corp.[11] is an example of the first situation where the corporation carried on isolated activities within the forum state. In this case a Massachusetts corporation performed a single contract in Vermont. In performing the contract the corporation negligently damaged the plaintiff's roof. A Vermont statute allowed substituted service on a foreign corporation which committed a tort against a resident of Vermont. The Supreme Court of Vermont held that the statute afforded due process and that a continuous activity within the state was not a prerequisite for jurisdiction. The Court relied on the fact that witnesses were present in the state, and that the administration of the case in Vermont would be both economical and would minimize inconvenience to the parties. In addition, it stated that Vermont had a policy, in order to protect its citizens, of deterring negligent acts within the

---

[8] 326 U.S. 310, 320.

[9] Smyth v. Twin City Improvement Corp., 80 A.2d 664.

[10] Gray v. American Radiator and Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961).

[11] 80 A.2d 664.

state, against its citizens and of making sure that they will be adequately compensated for any act committed upon them by a foreign corporation.

An illustration of the second situation, where the act committed by the defendant was outside the forum but results in an injury to the plaintiff within the forum, is Atkins v. Jones and Laughlin Steel Corporation[12] which was an action by the plaintiff against the defendant for negligence resulting in the plaintiff's injury. The plaintiff relied on a Minnesota statute[13] which allowed service of process upon the Secretary of State, and it was to have the same effect as that of personal service. The defendant moved to quash the service of process on the ground that it did no business in Minnesota. The lower court held that a tort becomes actionable as such when someone is injured as a proximate result of the negligent act. Thus, the corporation had committed a tort and was amenable to suit in Minnesota. The Supreme Court of Minnesota stated, at page 893:

". . . if the allegations of the complaint herein are established, it would follow that defendant was subject to the jurisdiction of our court, since the last event essential to its tort liability— the injury of plaintiff—occurred here. Under Section 303.13 Subd. 1(3), such contact with a Minnesota resident constituted doing business here so as to make defendant subject to service of process as provided herein."

---

[12] 104 N.W.2d 888 (1960) (Minnesota)

[13] M.S.A. Section 303.13 Subd. 1(3), which provides:
"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the Secretary of State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. *** The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the Secretary of State shall be of the same legal force and effect as if served personally within the State of Minnesota."

The Court, in balancing the interests, felt that to permit a Minnesota citizen to seek recompense in Minnesota courts under the single-act statute far outweighed the protection of the foreign corporation which was not physically doing business in the state. The Court gave "lip service" to the phrase "doing business" but came to its final conclusion on the basis of the corporation's mere contact with the state. It felt that the contact was of a sufficient quality to come within the state's public policy of protecting its own citizens.

However, it would seem that the doctrine of International Shoe has been extended to its farthest reaches by the recent case of Gray v. American Radiator and Standard Sanitary Corp.[14] That was an action brought by Gray against the Titan Valve Company and others, alleging that a certain water heater had exploded and injured the plaintiff. The complaint charged, in substance, that the Titan Company, a foreign corporation, had negligently constructed a safety valve, and that the injuries suffered were the result thereof. The summons was issued and duly served upon Titan's registered agent in Ohio, pursuant to an Illinois Statute.[15] The company filed a motion to quash on the ground that it had not committed a tort in Illinois. It filed an affidavit stating that it did no business in Illinois;

---

[14] 22 Ill.2d 432, 176 N.E.2d 761 (1961).

[15] Ill. Rev. Stat. 1955, chap. 110, pars. 16, 17 which provide:
"Section 16: (1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service of publication.
"Section 17: (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts: * * * (b) the commission of a tortious act within this State; * * *.
"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State."

it had no agent physically present in Illinois; and that it sold the completed valves to the co-defendant, American Radiator and Standard Sanitary Corporation, outside Illinois. A cross-claim was filed by American Radiator against Titan. The lower court granted the motion of the defendant, Titan, to dismiss both the complaint and the cross-claim. On appeal the Supreme Court of Illinois reversed and remanded the case to the lower court.

The Court discussed the problem of where the tort took place. It recognized the established conflict of laws rule which makes the place of the wrong the place where the last event happened to make the actor liable.[16] With this as a starting point, the Court held that this was sufficient contact with the state to render the defendant subject to its jurisdiction.[17]

This case represents the situation, where the defendant has committed an act outside the state, with the resultant damage to the plaintiff within the state of the forum. It can be seen that the defendant Titan had no contact with the State of Illinois other than having made a valve which was incorporated into a heater in Pennsylvania which ultimately was sold to a consumer in Illinois. The Court realized that the case concerned the extent to which due process would permit substituted service where the defendant had no agent or employee within the forum state.[18] It further felt that since jurisdictional requirements have been relaxed by the International Shoe case, substituted service would be permitted if the act complained of had substantial connection with the State of the forum and if there was reasonableness of notification. In this case the qualitative connection was more important than the quantitative connection of "doing business" or "presence" of the

---

[16] 77 A.L.R.2d 1266.
[17] 176 N.E.2d 761, 762.
[18] 176 N.E.2d 761, 763.

corporation in the forum. The Court so aptly stated the underlying theory for its decision on page 766:

"As a general proposition, if a corporation elects to sell its products for ultimate use in another state, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines. By the same token, today's facilities for transportation and communications have removed much of the difficulty and inconvenience formerly encountered in defending lawsuits brought in other States."

From the dictum of the International Shoe case, on pages 316 and 319 of the opinion, it can be seen that the approach used for corporations would also be applicable to individuals. Many of the reasons given for extending the power of the state over corporations would also apply to suits against individuals. Recent developments in the areas of communications and transportation led some courts to the conclusion that it would be just as easy and just as equitable to require an individual defendant who has wronged a citizen-plaintiff of the forum state to defend the suit in the forum, as to place the burden upon the plaintiff to effect service upon the defendant wherever the defendant could be found. The balancing of interests comes into full view by extending the International Shoe doctrine to individual defendants. The financial hardship on an individual defendant is more of a factor than in the case the corporate defendant. The doctrine of forum non conveniens can be applied to such situations. Hess v. Pawloski[19] decided the constitutionality of nonresident motorist statutes. The case was decided on the theory that when a nonresident commits a negligent act through the instrumentality of an automobile, there was

[19] 274 U.S. 352, where a Massachusetts statute, which declared that the use of the State's highways by a non-resident motorist would be deemed equivalent to an appointment by the motorist of the registrar as his attorney upon whom process could be served in any action arising out of any accident which the non-resident motorist was involved in while operating his motor vehicle upon the State's highways, was held constitutional.

sufficient social policies present to create a legal fiction. This fiction was that implied consent was given by the nonresident motorist to have service of process made upon him through a representative of the state. Of course, service could be made outside the state provided that the defendant actually received the process and that he had a reasonable time in which to defend the action.

The extension of jurisdiction to other situations than those involving nonresident motorist statute has already occurred. Some states have based jurisdiction over individuals on the theory that it would be fair to subject a defendant to the jurisdiction of the forum state when he has engaged in some dangerous activity within the state which has caused injury to a citizen of the state. Such a theory underlies the single act statutes which have been enacted in some of the states. The statutes follow the format of those statutes applicable to corporations.

An interesting and important decision has resulted from one of these statutes. In Nelson v. Miller[20] an action was brought for damages sustained by the plaintiff when an agent of the defendant negligently severed the plaintiff's finger. The defendant was engaged in the appliance business in Wisconsin, and, from what can be ascertained was an individual trading as an appliance store. The defendant sent one of his agents to Illinois to deliver a stove and while the agent was so engaged he commited the tort in Illinois. The defendant was served pursuant to the Illinois statute[21] which allowed service to be effected outside the state. The plaintiff appealed from the granting of defendant's motion to quash the summons. The Supreme Court of Illinois, in pronouncing the State's policy of acquiring Jurisdiction of out-of-state tort-feasors, stated:

[20] 11 Ill.2d 378, 143 N.E.2d 673 (1957).
[21] See footnote 15.

"The foundations of jurisdiction include the interest that a State has in providing redress in its own courts against persons who inflict injuries upon, or otherwise incur obligations, to those within the ambit of the State's legitimate protective policy. The limits on exercise of jurisdiction are not mechanical or quantitative."[22]

The Court went on further to state that as long as there was reasonable notice and the opportunity to be heard, the State could make reasonable provisions for acquiring jurisdiction.

Owens v. Superior Court[23] is a very interesting case and one in which Judge Traynor, one of the foremost authorities in the conflict of laws area, wrote the opinion. This was an action to prevent further proceedings in California in another civil action where the party was seeking to recover damages for a dog bite. At the time of the commencement of the suit for damages, the defendant was domiciled in Arizona. At the time of the alleged commission of the tort in California, the defendant was domiciled in California. The defendant was served pursuant to a California statute which allowed service of a summons and complaint outside the state when the defendant was a resident at the time the cause of action arose. The Supreme Court of California discharged the writ to prevent further proceedings. The Court commented that domicile at the time the cause of action arose was sufficient to acquire jurisdiction over the defendant under the California statute. Judge Traynor, in support of the contract theory, stated at page 924:

"In the present case the cause of action arose out of the defendant's activities in this state, namely, his ownership and possession of the offending dog. This fact alone is sufficient under the due process clause to permit courts of this state to assert personal jurisdiction over him."

■ Reverting to the facts and law of the case at Bar, the Court is of the opinion that if the Fluor Corporation had

---

[22] 143 N.E.2d 673, 676.
[23] 52 Cal.2d 822, 345 P.2d 921, 78 A.L.R.2d 388.

been doing business in the Virgin Islands when the tort was committed on May 6, 1963,[24] it would have been amenable to substitute service of process on the basis of 13 Virgin Islands Code § 407(c).

§ 407(c): "Upon the issuance of the certificates by the Government Secretary, the appointment of the authorized agent or agents of the corporation in the Virgin Islands upon whom process against the corporation may be served, shall be revoked and the corporation shall be deemed to have consented that service of process in any action based upon any cause of action arising in the Virgin Islands during the time the corporation was authorized to transact business in the Virgin Islands, may thereafter be made by service upon the Government Secretary."

██ Since there was a de facto withdrawal by the Fluor Corporation in 1955 and notice was given to the Government of the Virgin Islands in April, 1958, the Court is of the opinion that The Flour Corporation is not amenable to substitute service of process, Grabner v. Willys Motors, Inc., 282 F.2d 644, 86 A.L.R.2d 994. The reason being that it was not doing business in the Virgin Islands when the tort was committed. The logical conclusion, therefore, is that since The Fluor Corporation was not properly served, it is not a party to this action. Therefore, the motion of the Fluor Corporation to quash the service of process is hereby granted.

---

[24] 77 A.L.R.2d 1266.