**John L. FALEN, et al., Plaintiffs,**

v.

**CERVI LIVESTOCK COMPANY, Defendant.**

**CERVI LIVESTOCK COMPANY, Third-Party Plaintiff,**

v.

**C.E. DIXON, et al., Third-Party Defendants.**

**No. CV–R–81–138–ECR.**

United States District Court, D. Nevada.

June 1, 1984.

---

See also D.C., 581 F.Supp. 883 and 885.

Keith L. Lee, Reno, Nev., and John M. Doyle, Winnemucca, Nev., for plaintiffs.

Gordon H. DePaoli, Suellen E. Fulstone, Woodburn, Wedge, Blakey & Jeppson, Reno, Nev., for Cervi Livestock Co.

Eugene J. Wait, Jr., Reno, Nev., for third-party defendant C.E. Dixon.

Gordon M. Cowan, Reno, Nev., for third-party defendant Machart.

Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell by George Allison, Carson City, Nev., for third-party defendant America Stockyards Corp. dba Mid America Stockyards Corp.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Third-party defendant Mid America Stockyards (Mid America) has moved to dismiss the third-party complaint against it on the ground that it does not have such contacts with the state of Nevada as would satisfy the due process requirements for the exercise of in personam jurisdiction over it by this Court. It contends that the claims for relief do not arise from any acts by it within Nevada and, also, that it has not committed any of the acts specified in Nevada's long-arm statutes, that is, NRS §§ 14.065 and 14.080.

In its supporting papers, Mid America emphasizes that it has no assets, employees, agents or dealers in Nevada, that it does not advertise or solicit business in this State, and that it neither buys nor sells any goods or services in Nevada. It alleges that it never has sold any cattle at its only place of business (in Oklahoma) that it knew were specifically designated for shipment to Nevada.

Third-party plaintiff Cervi Livestock Company (Cervi), in its opposing papers, has shown the following: Mid America sells about 50,000 head of cattle each year, acting as a commission agent. It places no restrictions on the type of cattle nor on who may consign them for sale. In addition, Mid America has no interest in the identity or purpose of the buyer, other than in being paid by the successful bidders at its sales. As a result, the cattle it sells may be shipped anywhere by the buyers. The cattle (189 head) here involved were purchased at a sale conducted by Mid

America in which the livestock came from 19 different states.

The Court is deciding the instant motion based on the written materials which comprise the Court file in this case. They include affidavits and discovery materials. Cervi's burden is only to make a prima facie showing of jurisdictional facts, through those written materials, in order to resist successfully Mid America's motion to dismiss. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977).

Both sides have argued the applicability of NRS 14.065, which is the Nevada long-arm statute that covers transacting business and committing tortious acts within the State, as well as NRS 14.080, which is the State's product liability long-arm statute. Since the Court concludes that in personam jurisdiction over Mid America may properly be based on the latter statute, it will not here discuss NRS 14.065. In pertinent part, NRS 14.080(1) reads as follows:

> "Any ... partnership ... created and existing under the laws of any other state, ... which ... markets or otherwise supplies ... indirectly any product for use in this state may be lawfully served with any legal process in any action to recover damages for injury to ... property resulting from such ... use in this state...."

Although no case has been found on point, it seems apparent to the Court that livestock should be included within the word "product," as used in the statute. The very purpose of such legislation is to aid the consumer or distributor who is injured by a defect in something tangible that is shipped into the State for use or distribution here. The wording itself quite deliberately does not limit the statute's applicability to manufactured items or inanimate objects. Nevada's own Uniform Commercial Code includes livestock within the definition of "farm products." NRS 104.-9109(3); *see also S-Creek Ranch, Inc. v. Monier & Company,* 509 P.2d 777, 782 (Wyo.1973).

The forum state does not violate due process if it asserts personal jurisdiction over a company that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–8, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Hedrick v. Daiko Shoji Co., Ltd., Osaka,* 715 F.2d 1355 (9th Cir. 1983). The word "expectation" may be interpreted to mean "reasonable anticipation," *see Jeppeson & Co. v. Eighth Judicial District Court,* 83 Nev. 329, 431 P.2d 260, 261 (1967), or "reasonably foresee," *see Metal-Matic, Inc. v. Eighth Judicial District Court,* 82 Nev. 263, 415 P.2d 617 (1966).

The record before the Court shows that Mid America's business benefits by having both more consignors and more bidders. Clearly, it wants to serve, directly or indirectly, the market for livestock in states other than Oklahoma. Despite the facetious assertion by one of its partners during deposition that he wouldn't expect cattle to be shipped into Nevada unless they could subsist on sand and casino carpets, it is clear that it is customary for cattle to be shipped great distances and that Mid America should reasonably have anticipated or foreseen that some of the livestock it sold would be destined for Nevada. *See World-Wide Volkswagen Corp. v. Woodson, supra* 444 U.S. at 297, 100 S.Ct. at 567. Further, it should reasonably anticipate being haled into court in this State when it is alleged that a number of those cattle suffered from brucellosis. *Ibid.*

IT IS, THEREFORE, HEREBY ORDERED that Mid America Stockyards' Motion to Dismiss Amended Third-Party Complaint for Lack of Jurisdiction and to Quash Service of Summons be DENIED.