**HUFFY CORPORATION, Plaintiff,**

v.

**OVERLORD INDUSTRIES; and (Ballistic) by U.S. International**

Co., Ltd.,[1] Defendants.

No. CV–S–02–1308PMP(RJJ).

United States District Court,
D. Nevada.

Feb. 24, 2003.

1. This case was originally filed under the title "Huffy Corporation v. Overlord Industries; and (Ballistic) by U.S. International Co., Ltd."

Joseph P. Hardy, Beckley Singleton, Chtd. (LV), Las Vegas, NV, Benjamin A. Kahn, Brownstein, Hyatt & Farber, Denver, CO, Peter J. Korneffel, Brownstein, Hyatt & Farber, Denver, CO, Dan R. Waite, Beckley Singleton, Chtd. (LV), Las Vegas, NV, for Huffy Corporation, Plaintiff.

Johnny C. Chiu, Miller & Chevalier Chartered, Washington, DC, Stephen L. Morris, Morris Pickering & Sanner, Las Vegas, NV, Matthew T. Reinhard, Miller & Chevalier Chartered, Washington, DC, Anthony J. Trenga, Miller & Chevalier Chartered, Washington, DC, for (Ballistic) By U.S. International Co., Ltd. Overlord Industries, Defendant.

## ORDER

PRO, Chief Judge.

Presently before this Court is a Motion to Dismiss. Defendant Overlord Industries ("Overlord") filed a Motion to Dismiss (Doc. # 9) on November 19, 2002. Plaintiff Huffy Corporation ("Huffy") filed Response in Opposition to Overlord's Motion to Dismiss (Doc. # 12) on December 13, 2002. Huffy also filed Supplement of Original Signature to David B. Duff's Affidavit in Support of Defendant's [sic] Response to Overlord's Motion to Dismiss (Doc. # 18) on December 24, 2002. Overlord filed a Reply (Doc. # 19) on January 6, 2003.

## I. BACKGROUND

Plaintiff Huffy, a bicycle manufacturer, is an Ohio corporation with its principal place of business in Ohio. (Compl.¶ 4.) Defendants Overlord and U.S. International Co. ("US International") are allegedly Taiwanese corporations with their principal places of business in Taiwan. (Id. ¶¶ 6–7.)

Huffy contends that Overlord designs, manufactures, assembles, and distributes bicycle and bicycle components, and that U.S. International designs, manufactures, assembles, and distributes bicycles and bicycle components for Overlord. (Compl.¶¶ 6–7.) Huffy alleges that its predecessor-in-interest, Royce Union Bicycle Co. ("Royce"), contracted with Overlord to purchase bicycles and/or bicycle component parts from Overlord. (Id. ¶¶ 5, 9.) Huffy alleges that either Overlord or U.S. International produced bicycles or bicycle component parts that were deficient and then sold the deficient parts to Royce or Huffy. (Id. ¶ 12.) Huffy also alleges that the contracts between Overlord and Royce and between Overlord and Huffy provided that Overlord would indemnify Huffy and Royce for any injuries or claims that arose from the bicycles or bicycle parts. (Id. ¶ 14.) Huffy further contends that, through similar contracts, U.S. International agreed to indemnify Overlord. (Id. ¶ 15.)

According to Huffy, eighteen people have brought claims against Huffy for alleged damages stemming from use of equipment that contained Overlord and U.S. International component parts. (Compl.¶¶ 19–36.) As a result, Huffy has brought the present diversity action against Overlord and U.S. International for contract breach, breach of the implied covenant of good faith and fair dealing, indemnification, and declaratory relief. (Id. ¶¶ 40–61.)

## II. LEGAL STANDARD

 Under the Federal Rules of Civil Procedure, a court may dismiss an action for "lack of jurisdiction over the person." Fed.R.Civ.P. 12(b)(2). If a court lacks personal jurisdiction over the parties, the court's judgment is rendered void. *Pennoyer v. Neff*, 95 U.S. 714, 726–28, 24

L.Ed. 565 (1877); *Veeck v. Commodity Enters., Inc.,* 487 F.2d 423, 426 (9th Cir. 1973). Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that a court has personal jurisdiction over the defendant. *Butcher's Union Local No. 498 v. SDC Inv., Inc.,* 788 F.2d 535, 538 (9th Cir.1986) (citing *KVOS v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936)). Typically, federal courts have personal jurisdiction over defendants to the same extent as the state courts "in the state in which the [federal] district court is located." *See* Fed.R.Civ.P. 4(k)(1)(A). In Nevada, courts "may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States." Nev.Rev.Stat. 14.065(1).

The courts have interpreted the Due Process Clauses of the Constitution to require that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). *See also Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'") (citing *International Shoe,* 326 U.S. at 320, 66 S.Ct. 154). Further, whether a defendant "should reasonably anticipate being haled into court" in the forum state is "critical to due process analysis." *World–Wide Volkswagen Corp. v.*

*Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Courts may exercise general or specific personal jurisdiction over a defendant. "For a defendant to be subject to general *in personam* jurisdiction, it must have such continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Int'l Ltd. v. McLaughlin,* 49 F.3d 1387, 1391 (9th Cir.1995) (citing *Core–Vent v. Nobel Indus. AB,* 11 F.3d 1482, 1485 (9th Cir.1993)). *See also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If a court cannot exercise general personal jurisdiction over a defendant, a court may still have specific personal jurisdiction if a three-part test is met:

(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise must comport with fair play and substantial justice; *i.e.* it must be reasonable.

*Reebok Int'l,* 49 F.3d at 1391 (citing *Core–Vent,* 11 F.3d at 1485).

## III. DISCUSSION

Defendant Overlord has moved to dismiss the present action on the ground that this Court lacks personal jurisdiction over Overlord. Huffy responds that the Nevada long-arm statute confers jurisdiction over Overlord. Because this court "acts on a defendant's motion to dismiss under Rule 12(b)(2) without holding an evidentia-

ry hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995) (citing sources). To establish a prima facie case, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* at 1498 (citing *Data Disc, Inc. v. Systems Technology Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977)).

### A. Nevada's Long–Arm Statutes

Huffy contends that both Nevada Revised Statute 14.065(1) and Nevada Revised Statute 14.080 give this Court jurisdiction over Overlord.

### 1. Nevada Revised Statute 14.080

According to Nevada Revised Statute 14.080:

*Any company,* firm, partnership, corporation or association created and existing under the laws of any other state, territory, foreign government or the Government of the United States, *which manufactures, produces, makes, markets or otherwise supplies directly or indirectly any product for distribution, sale or use in this state may be lawfully served with any legal process in any action to recover damages for an injury to a person or property resulting from such distribution, sale or use in this state* by mailing to the last known address of the company, firm, partnership, corporation or association, by registered or certified mail return receipt requested, a copy of the summons and a copy of the complaint.

Nev.Rev.Stat. 14.080(1) (emphasis added).

In interpreting 14.080, the Nevada Supreme Court[2] has held that 14.080 can be used to assert personal "jurisdiction over a foreign manufacturer of a product which it reasonably may expect to enter interstate commerce, which does enter interstate commerce, and because of an alleged defect, causes injury in Nevada to the plaintiff." *Metal–Matic, Inc. v. Eighth Judicial Dist. Court,* 82 Nev. 263, 415 P.2d 617, 619 (1966). The Nevada Supreme Court has repeatedly and uniformly limited 14.080 to service of process over foreign defendant corporations whose products allegedly caused tortious injury to plaintiffs in Nevada. *See id.* at 619. *See also Judas Priest v. Second Judicial Dist. Court,* 104 Nev. 424, 760 P.2d 137, 139 n. 2 (1988); *Wilmack, Inc. v. Second Judicial Dist. Court,* 97 Nev. 547, 635 P.2d 296, 298 (1981); *Jacobsen v. Ducommun, Inc.,* 87 Nev. 240, 484 P.2d 1095, 1096 (1971); *Drew Rentals v. First Judicial Dist. Court,* 84 Nev. 201, 438 P.2d 253, 253 (1968); *Jeppeson & Co. v. Eighth Judicial Dist. Court,* 83 Nev. 329, 431 P.2d 260, 261 (1967); *Gambs v. Morgenthaler,* 83 Nev. 90, 423 P.2d 670, 672 (1967).

■ Nevada Revised Statute 14.080 is inapplicable to the case at bar for two reasons. First, Huffy does not allege in its Complaint that any of the claimants who have asserted personal injury claims against Huffy are either Nevada residents or were in Nevada at the time of their alleged injuries. Injury in Nevada is a prerequisite to proper service of process pursuant to 14.080. *See, e.g., Judas Priest,* 760 P.2d at 138 ("NRS 14.080 allows for service of process on any corporation which directly or indirectly supplies a product for distribution, sale or use when an injury results from such activity in the state [of Nevada]."); *Wilmack,* 635 P.2d at

---

**2.** This Court is bound to the Nevada Supreme Court's interpretation of 14.080. *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1207 (9th Cir.1980) (citing *Data Disc Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1286 n. 3 (9th Cir.1977)).

298 ("[T]his court has limited [14.080] to apply only to service of process upon a foreign corporation whose product has caused injury in this state.") (citing *Metal-Matic*, 82 Nev. 263, 415 P.2d 617). In fact, the Complaint does not allege any facts at all with respect to where the claimants were injured, or where they reside.

Second, Huffy does not sue in tort; Huffy sues in contract. Huffy asserts that because 14.080 applies to "damages for an injury to a person or property," Nev.Rev. Stat. 14.080, the statute is not limited to tort actions. Given the Nevada Supreme Court's consistent application of the statute to tort actions, this argument is clearly without merit. The plain language of the statute relates to products liability actions, which clearly fall under the rubric of tort law. Huffy provides a single case cite in reference to its assertion that 14.080 can apply to contract actions—*Falen v. Cervi Livestock Co.*, 585 F.Supp. 627, 629 (D.Nev.1984). *Falen*, however, is a federal district court case and therefore not binding on this court. Further, the *Falen* ruling is unclear with respect to whether the claims at issue were contract or tort claims. Indeed, two other published decisions in the same case concern tort claims in whole or in part. *See Falen v. Cervi Livestock Co.*, 581 F.Supp. 883, 885 (D.Nev.1984) ("The amended third-party complaint alleges that [defendant] Machart was negligent in performing brucellosis and pregnancy tests and that he fraudulently misrepresented the cattle to be brucellosis-free and pregnant."); *Falen v. Cervi Livestock Co.*, 581 F.Supp. 885, 887 (D.Nev.1984) ("The pleading declares that Dixon fraudulently misrepresented the condition of the cattle, and also breached the implied warranties of merchantability and fitness for a particular use (cow-calf operations)."). For the reasons stated above, Huffy's argument that 14.080 con-

fers jurisdiction on this Court over Overlord fails.

## 2. Nevada Revised Statute 14.065

Nevada Revised Statute 14.065(1) provides that courts "may exercise jurisdiction over a party to a civil action on any basis not inconsistent with the constitution of this state or the Constitution of the United States." Nev.Rev.Stat. 14.065(1). Thus, this Court must look to *International Shoe* and its progeny to determine whether exercising personal jurisdiction over Overlord would be proper. *See generally International Shoe*, 326 U.S. 310, 66 S.Ct. 154.

## B. Personal Jurisdiction

### 1. General Jurisdiction

■ Huffy has failed to meet its burden of showing that Overlord has "continuous and systematic" contacts with Nevada such that the exercise of general personal jurisdiction over Overlord would be proper. *See Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868; *Reebok Int'l*, 49 F.3d at 1391. In support of Huffy's assertion that this Court has general personal jurisdiction over Overlord, Huffy argues that Overlord does business in Nevada in two ways. First, Huffy asserts that Overlord "solicit[s] business contracts and relationships in Nevada every year at the annual Interbike trade show." (Pl.'s Response in Opp'n to Overlord's Mot. to Dismiss [hereinafter "Pl.'s Opp'n"] at 5.) Second, Huffy asserts that Overlord's practice of "selling products to national distributors ... with the expectation and understanding that Huffy would (and did) distribute the Overlord bicycles throughout the United States, including to Nevada retailers and consumers" constitutes sufficient support for this Court to exercise general personal jurisdiction over Overlord. (*Id.*) These con-

tacts cannot be accurately described as "continuous and systematic."

In *Helicopteros*, the United States Supreme Court found that a Texas state court could not properly exercise personal jurisdiction over a Colombian corporation when that corporation did "not have a place of business" in the forum state and had "never been licensed to do business" there. 466 U.S. at 416, 104 S.Ct. 1868. The Court stated:

> Basically, [the defendant]'s contacts with [the forum state of] Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [the Fort Worth company of] Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Forth Worth for training.

*Id.* The Court found these activities insufficient to confer jurisdiction over the defendant. *Id.* at 418–19, 104 S.Ct. 1868.

Here, the alleged contacts do not even rise to the level asserted in *Helicopteros*. 466 U.S. at 416, 104 S.Ct. 1868. Huffy asserts that two of Overlord's activities— attending the annual Interbike trade show, and selling products to national distributors with the understanding that those products would be sold in Nevada—are sufficient to confer jurisdiction on this Court. However, Huffy does not allege the extent of Overlord's involvement in the Interbike trade show. Huffy does offer evidence that "Overlord or its affiliates have [sic] marketed Overlord's products for years at the annual Interbike." (Pl.'s Opp'n, Ex. Aff. of David Duff [hereinafter "Duff Aff."] ¶ 11.) However, Huffy does not explain its use of the phrase "for years"—"for years" could mean two years, ten years, or any other number of years.

Without specific information about Overlord's alleged involvement at the trade show, this Court will not assume that Overlord's alleged involvement at the trade show constitutes contact with Nevada that is sufficient to justify this Court's exercise of general jurisdiction.

Further, the United States Supreme Court has stated in the context of specific personal jurisdiction that "[t]he placement of a product into the stream of commerce, without more, is not an act the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (discussing specific personal jurisdiction). General jurisdiction requires more substantial contacts with the forum state than specific jurisdiction requires. Thus, Overlord's alleged placement of products into the stream of commerce does not support this Court's exercise of general jurisdiction.

### C. Specific Jurisdiction

In order for this Court to assert specific personal jurisdiction over Overlord, Huffy must aver facts that show that Overlord "purposefully direct[ed] his activities" toward Nevada, that the claims "arise out of or relate to [Overlord]'s forum-related activities," and that "exercise [of jurisdiction] comport[s] with fair play and substantial justice." *Reebok Int'l*, 49 F.3d at 1391.

#### 1. Purposeful Availment

■ The facts alleged here do not indicate that Overlord "purposefully direct[ed its] activities" toward Nevada. *See Reebok Int'l*, 49 F.3d at 1391. Huffy does not allege that Overlord keeps an office in Nevada, is incorporated here, or has appointed a resident agent here. The only direct contact with Nevada alleged by Huffy occurred when Overlord allegedly attended the annual Interbike trade show.

A corporation's attendance at a Las Vegas trade show once a year for an unspecified number of years is insufficient to support a finding that the corporation "purposefully availed" itself of conducting business in Nevada. Huffy also asserts that Overlord has purposefully availed itself of the laws of Nevada because Overlord has sold "products to national distributors ... with the expectation and understanding that Huffy would (and did) distribute the Overlord bicycles throughout the United States, including to Nevada retailers and consumers." (Pl.'s Opp'n at 5.) However, as stated above, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Further, Overlord does not even ship its materials to the United States; Overlord ships its products "on 'free on board' ("F.O.B.") terms ... to the ports of Kaohsiung, Taiwan and Yien–Tien, China." (Memo. in Support of Def. Overlord's Mot. to Dismiss [hereinafter "Def.'s Mot. to Dismiss"], Ex., Tseng Aff. ¶ 5.) Overlord has not "purposely availed" itself of the laws of the state of Nevada. *Reebok Int'l*, 49 F.3d at 1391.

### 2. Claim's Relation to Forum–Related Activities

The Ninth Circuit "rel[ies] on a 'but for' test to determine whether a particular claim arises out of forum-related activities

and thereby satisfies the second requirement for specific jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir.1995). Thus, the question here is whether Huffy's claims would have arisen "but for" Overlord's appearance at the Interbike trade show, or "but for" Overlord's indirect placement of its products into the stream of commerce in Nevada. The answer is "yes." [3]

Huffy's claims do not depend on Overlord's presence at the trade show. Huffy does allege that "Overlord and Royce/Huffy advanced their business relationship and negotiated the contracts at issue in the above-referenced case in part at the annual Interbike." [4] (Duff Aff. ¶ 14.) However, alleging that Overlord advanced its business relationship with Huffy "in part" at Interbike does not translate into the conclusion that "but for" Overlord's appearance at Interbike, Huffy and Overlord would not have entered the contractual agreement that forms the basis of the present case.

Nor do Huffy's claims depend on the placement of Overlord's products into the stream of commerce of Nevada. Huffy does not allege that any of the eighteen people who have brought claims against Huffy for alleged damages stemming from use of defective bicycle equipment are Nevada residents or were injured in Nevada. (Compl.¶¶ 19–36.)

Thus, Huffy does not meet the second requirement for the exercise of specific jurisdiction.

---

**3.** In Overlord's Motion to Dismiss, Overlord states: "The relevant inquiry is whether Huffy's claims against Overlord would have arisen 'but for Overlord's bicycles being sold in Nevada (by Huffy), or Ms. Tseng's appearance at the Interbike trade show.' The answer is 'no.'" (Def.'s Mot. to Dismiss at 9.) This cannot be what Overlord meant to say. If the answer to the questions posed is "no," then Huffy's claims against Overlord would *not* have arisen but for the sale of bicycles in

Nevada and Tseng's appearance at the trade show. If that were the case, then the but for test would be satisfied, strengthening Huffy's argument that this Court should exercise personal jurisdiction over Overlord.

**4.** Here, reliance on the Duff Affidavit is not problematic because this Court would reach the same conclusion regardless of reliance on the Affidavit.

### 3. Fair Play and Substantial Justice

The Ninth Circuit uses a seven-factor balancing test to determine whether the exercise of personal jurisdiction over a defendant "comports with 'fair play and substantial justice' ":

> In determining whether the exercise of jurisdiction over a nonresident defendant comports with "fair play and substantial justice," we must consider seven factors: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.... None of the factors is dispositive in itself; instead, we must balance all seven.

*Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–1488 (9th Cir.1993) (citations omitted). *See also Ballard*, 65 F.3d at 1500–02 (applying the *Core–Vent* factors). The question underlying the above seven-factor test is one of reasonableness. *Core–Vent*, 11 F.3d at 1485. The court presumes that "an otherwise valid exercise of specific jurisdiction is reasonable." *Ballard*, 65 F.3d at 1500.

The presumption of reasonableness does not apply here because the exercise of specific jurisdiction is not "otherwise valid." *Ballard*, 65 F.3d at 1500. Because Huffy fails to meet its burden with respect to the first two prongs of the specific jurisdiction test, this Court has no need to examine the third prong. Huffy has not supplied this Court with facts that, if true, would support a finding of specific jurisdiction. *See Ballard*, 65 F.3d at 1498.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Overlord Industries' Motion to Dismiss (Doc. # 9) is hereby GRANTED. Plaintiff Huffy Corporation's claims against Defendant Overlord are hereby DISMISSED without prejudice.