METAL-MATIC, INC., A MINNESOTA CORPORATION, PETITIONER, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE GEORGE E. MARSHALL, JUDGE THEREOF, RESPONDENTS.

No. 5070

June 23, 1966                    415 P.2d 617

*Elwin C. Leavitt* and *S. Mahlon Edwards,* of Las Vegas, for Petitioner.

*Singleton, De Lanoy & Jemison, Gregory & Gregory, Morse & Graves, Jones, Wiener & Jones,* of Las Vegas, for Respondents.

264

## OPINION

By the Court, ZENOFF, D. J.:

Petitioner, a foreign corporation and codefendant in a tort action, seeks a writ of prohibition against the Eighth Judicial District Court claiming a lack of in personam jurisdiction. We deny the writ and affirm the trial court's denial of a motion to quash service of process.

This matter arose from a drowning in Lake Mead allegedly caused, at least in part, by a defective boat railing. The railing was manufactured by petitioner, a Minnesota corporation, which contends it never directly or indirectly solicited or conducted any business in the State of Nevada and, therefore, is not amenable to personal service in Nevada.

On May 17, 1963, John J. Caselli, and others, purchased a Kayot pontoon boat from Byrd's Pontoon Boats, a retailer of boats in Clark County. Two months later, while standing in the rear of the boat, Alphonse Caselli, the father of John, fell into the water and drowned. Action was commenced alleging that the railing at the rear of the boat had given way as Alphonse Caselli leaned against it and that his drowning resulted.

The heirs of Alphonse Caselli brought suit against Byrd, the distributor of the boat, Kayot, Inc., the manufacturer of the boat, a Minnesota corporation, and Metal-Matic, Inc., a Minnesota corporation, manufacturer of the railing. The boat with railing was assembled in Minnesota and shipped from there to the distributor in Clark County, Nevada.

Plaintiff in the lawsuit contends that Metal-Matic can properly be served with process pursuant to NRS 14.080, the so-called "one-act" or "long arm" statute of Nevada.

"NRS 14.080. Products liability: Service of process on foreign manufacturers, producers, suppliers.

"1. Any company, firm, partnership, corporation or association created and existing under the laws of any other state, territory, foreign government or the Government of the United States, which manufactures, produces, makes, markets or otherwise supplies directly or indirectly any product for distribution, sale or use in this state may be lawfully served with any legal process in any action to recover damages for injury to person or property resulting from such distribution, sale or use in this state in the manner prescribed in this section."

Plaintiff asserts that by supplying a component part to a product which, in the course of interstate commerce, could foreseeably be expected to find its way into Nevada, and injury resulted in some manner from the product, that the fact of injury was sufficient to place the manufacturer of the product within NRS 14.080.

Long arm statutes seek to provide one injured in the forum state with a method of acquiring jurisdiction over foreign corporations whose defective product within the forum state has caused injury. However, to satisfy due process, a court must have the power to subject a foreign defendant to its jurisdiction. Traditionally, in addition to the opportunity to appear and defend (i.e., proper notice), in personam power has depended upon a defendant's "presence" in the forum state, constructive or actual. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). What constitutes such presence under

modern concepts has been examined by the U.S. Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945) ; McGee v. International Life, 355 U.S. 220, 2 L.Ed.2d 223, 78 S.Ct. 199 (1957) ; Hanson v. Denckla, 357 U.S. 235, 2 L.Ed.2d 1283, 78 S.Ct. 1228 (1958). These cases concerned a right of action on causes arising from commercial transactions. Here, we are faced with a cause of action in tort.

Construction of such a statute was provided by the Illinois Supreme Court in Gray v. American Radiator Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961). It held that a statute providing that a nonresident who commits a tortious act within Illinois submits to the jurisdiction of that state and does not violate due process.[1] (But see New York's Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 209 N.E.2d 68 (1965), combined cases.)

The rationale of Gray, supra, rules this case. In Gray, the defendant manufactured a safety valve in Ohio and sold it to an independent company outside of Illinois. The valve was attached to a water heater in Pennsylvania and later sold to an Illinois consumer. An Illinois woman was injured in an explosion allegedly caused by the negligence of the manufacturer in Ohio. Illinois process was served in Ohio. The Illinois Supreme Court held that the "tortious act" (as prescribed in their statute), had been committed in Illinois because the injury occurred there.

The injury occurred in Illinois and was a minimum contact with that state satisfying due process. This was considered sufficient to meet the constructive presence requirement. In our case, a manufacturer of a component part of a boat can presume or reasonably foresee that its potential market would be Lake Mead or Lake Tahoe, in Nevada, as well as the lake areas of Minnesota, Wisconsin, Michigan, or in any other part of the United States where navigable lakes or waters are located. It should not matter that the purchase was

---

[1]Ill. Laws 1955, pp. 2238, 2245–46, Ill.Rev. Stat. c-110, § 17(1).

made from an independent middleman or that someone other than the defendant shipped the product into this state. Gray, supra, at 766.

Illinois was satisfied that "tortious act" meant "injury occurring within that state." Our statute says directly what the Illinois and New York courts had to interpret. NRS 14.080 specifically provides for service of process upon a foreign corporation whose product has caused *"injury * * * in this state."*

Despite some statements in Hanson v. Denckla, 357 U.S. 235, 2 L.Ed.2d 1283, 78 S.Ct. 1228 (1958), the spirit of Pennoyer is almost buried. The parade away from its confines, from Hess v. Pawloski, 274 U.S. 352, 71 L.Ed. 1091, 47 S.Ct. 632 (1927), to the present, coincides with the rapid development of communications, travel, expansion of nation-wide markets, and that corporate defendants are more likely to have money to spend in defense of lawsuits than plaintiffs have to prosecute their lawsuits.

Where it is reasonably foreseeable that a product will enter the flow of commerce, the manufacturers of that product can expect to be sued in any state where the product is alleged to have caused an injury. This is without regard to how many hands have touched the product from its production to the time or place of the injury. Whether it be labeled a minimal contact within the forum state if the litigation concerns a commercial transaction, or a one act tort, the effect is the same, i.e., jurisdiction in the forum state attaches. This has become a fact of legal life. It appears that the attractions of the most convenient forum will eventually be the jurisdictional test to be applied. 66 Columbia Law Rev. 199 (1966); 1963 U. of Ill. Law Forum 533 (1963); 25 U. of Chicago Law Rev. 569 (1957–58); Owens v. Superior Ct. of L.A. Co., 52 Cal.2d 822, 345 P.2d 921 (1959); Mardenborough v. Gov't of Virgin Islands, 235 F.Supp. 468 (1964); Atkins v. Jones & Laughlin Corp., 258 Minn. 571, 104 N.W.2d 888 (1960).

We conclude that under NRS 14.080 Nevada may acquire jurisdiction over a foreign manufacturer of a

product which it reasonably may expect to enter interstate commerce, which does enter interstate commerce, and because of an alleged defect, causes injury in Nevada to the plaintiff.

Writ denied.

THOMPSON and COLLINS, JJ., concur.