Annette M. **ABRAHAM, et al., Plaintiffs,**

v.

**AGUSTA, S.P.A, et al., Defendants.**

**No. CV–S–96–1073–LDG (RLM).**

United States District Court.
D. Nevada.

June 9, 1997.

---

Riley M. Beckett, Beckett & Yott, Carson City, NV, Daniel Donnelly, Garrison, NY, for Annette M. Abraham, Autumn L. Abraham, Amy M. Abraham.

Rudolph V. Pino, Jr., Pino & Associates, White Plains, NY, Walt Cannon, Peter Angulo, Rawlings, Olson, Cannon, Gormley & Desruisseaux, Las Vegas, NV, for Finmeccanica, S.p.A., Construzioni Aeronautiche Giovanni Agusta, S.p.A., Agusta, S.p.A., Siai Marchetti, S.p.A., Siai Marchetti, S.r.L.

Elizabeth Goff Gonzalez, Beckley, Singleton, Jemison & List, Chtd., Las Vegas, NV, for Boyd Gaming Corp.

Robert L. Greer, V. Andrew Cass, Kern & Wooley, Mesa, AZ, Luke Kristopher S. Rath, Broening Oberg Woods Wilson & Cass, Las Vegas, NV, for Fox Five One Ltd., Inc.

## ORDER

GEORGE, Chief Judge.

This matter comes before the court on Defendant Fox Five One Ltd., Inc.'s motion to dismiss for lack of personal jurisdiction (# 12). Plaintiffs opposed (# 14) and defendant replied (# 16). Also pending before the court is plaintiffs' request for oral argument on the defendant's motion to dismiss (# 17).

## I. Background

This products liability case arises out of the crash of an aircraft while engaged in simulated aerial combat. The deceased, Robert J. Abraham, was a pilot employed by Desert Aces L.L.C. ("Desert Aces"), a Nevada company engaged in the business of taking non-pilots into simulated aerial combat. On December 3, 1994, Robert J. Abraham and his non-pilot passenger were killed when the aircraft they were piloting crashed outside of Las Vegas, Nevada. The aircraft, a SIAI Marchetti SF260C (Registration No. N58FD), was manufactured by SIAI Marchetti, S.p.A. ("Marchetti"), an Italian corporation with its primary place of business in Italy. According to the chain-of-title submitted by the plaintiffs, Marchetti sold the aircraft to Defendant Fox Five One Ltd., Inc. ("Fox Five") sometime in 1983. Fox Five is a Texas corporation engaged in the business of selling and maintaining retail aircraft. Fox's principal place of business is in the State of Texas. A review of the chain-of-title also indicates that Fox Five initially sold the aircraft at issue within the State of Texas and then repurchased the aircraft from the same buyer. Thereafter, on or about April 1, 1992, Fox Five sold the aircraft to Fighter Pilots USA, Inc. ("Fighter Pilots USA"), a company located in Tampa, Florida and presumably also engaged in the business of simulated aerial combat. On or about June 14, 1994, Fighter Pilots USA sold the aircraft to Desert Aces. The crash giving rise to the instant action occurred while the aircraft was owned by Desert Aces.

This action was initiated by the plaintiffs who are the heirs of the deceased pilot. In their complaint, the plaintiffs allege several causes of action against multiple defendants, including the aircraft's manufacturer and retail distributor, based on theories of strict products liability and negligence. Essentially, plaintiffs allege that the crash occurred when the passenger with whom Robert Abraham was flying took control of the aircraft and induced the aircraft into a flat-spin, causing the aircraft to impact the desert floor. The complaint further alleges that the defendants are liable for Robert Abraham's death for designing, marketing and selling the aircraft: (1) without there being incorporated into the aircraft a means by which the pilot-in-command could isolate control inputs from the non-pilot passenger and take independent control of the aircraft, and (2) means to avoid or recover the aircraft from a flat-spin.

In their Third and Sixth Causes of Action, the plaintiffs allege that Defendant Fox Five is liable for the deceased's death under strict products liability and negligence theories, respectively, for marketing and selling the aircraft when the aircraft and accompanying operating manuals were so defective so as to be unreasonably dangerous for the aircraft's intended use. Of the defendants, only Fox Five now moves to dismiss for lack of personal jurisdiction.[1]

## II. Analysis

 Because this court will confine the personal jurisdiction determination to the parties' pre-trial motions and affidavits, plaintiffs are required to make only a *prima facie* showing of the jurisdictional facts to prevail over Fox Five's motion to dismiss. *Data Disc, Inc. v. Systems Technology Assoc's, Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). Where a federal court sits in diversity, the exercise of personal jurisdiction over a non-resident defendant turns on two *independent* inquiries: (1) whether an applicable state statute (e.g., long-arm statute) potentially confers personal jurisdiction over the defendant, and (2) whether the exercise of personal jurisdiction over the defendant comports with the defendant's constitutional due process rights. *Data Disc,* 557 F.2d at 1286. Both inquiries must be satisfied to properly exercise personal jurisdiction over an out-of-state defendant.

### A. Nevada's Products Liability Long-arm Statute

As to the first inquiry, plaintiffs assert that personal jurisdiction is conferred by N.R.S. § 14.080, Nevada's products liability long-arm statute, which governs service of process on foreign manufacturers, producers and suppliers of products. The defendant essentially argues that it is not a manufacturer and, therefore, not the *type* of defendant envisioned by the products liability statute. The statute provides in pertinent part:

> Any ... corporation ... created and existing under the laws of another state ... which manufactures, produces, makes, markets or *otherwise supplies directly or indirectly* any product for distribution, *sale or use* in this state may be lawfully served with any legal process in any action to recover damages for injury to person or property resulting from such distribution, sale or use in this state....

N.R.S. § 14.080(1). This court is bound by the interpretation given to § 14.080 by the Nevada Supreme Court. *See Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1207 (9th Cir.1980).

The Nevada Supreme Court has given a broad interpretation to § 14.080. In *Metal–Matic, Inc. v. Eighth Judicial Dist. Court,* 82 Nev. 263, 415 P.2d 617 (1966), Nevada's high court was presented with a products liability case wherein an out-out-state defendant was sued by the heirs of the deceased. The out-of-state defendant, Metal–Matic, manufactured an allegedly defective boat railing which was installed in turn by a Minnesota boat manufacturer. The boat manufacturer shipped the boat to a Nevada distributor where it was then sold to a Nevada consumer. While the consumer was boating on Lake Mead, the allegedly defective rail gave way resulting in the drowning of the boat owner's father. Metal–Matic argued that Nevada courts could not exercise personal jurisdiction over it because the defendant never directly or indirectly solicited or conducted business in Nevada.

In *Metal–Matic,* Nevada Supreme Court ultimately found that § 14.080 conferred personal jurisdiction over the defendant, stating:

> Where it is reasonably foreseeable that a product will enter the flow of commerce, the manufacturers of that product can expect to be sued in any state where the product is alleged to have caused the injury. This is without regard to how many hands have touched the product from its production to the time or place of the injury. Whether it be labeled a minimal

---

1. Fox Five's motion to dismiss is captioned as a motion to dismiss for lack of *subject matter* jurisdiction. However, the court will assume, based on the arguments contained therein, that the motion is incorrectly captioned and is intended to challenge only personal jurisdiction over the defendant.

contact, or a one act tort, the effect is the same, i.e., jurisdiction in the forum state attaches.

*Metal–Matic,* 82 Nev. at 267, 415 P.2d 617. As the instant defendant correctly points out, *Metal–Matic* dealt with a manufacturer of an allegedly defective product component and the holding in that case appears to apply specifically to manufacturers, as opposed to product retailers like Fox Five. *See Metal–Matic,* 82 Nev., at 267–68, 415 P.2d 617 ("We conclude that under N.R.S. § 14.080 Nevada may acquire jurisdiction over a foreign *manufacturer* of a product which it reasonably may expect to enter interstate commerce, which does enter interstate commerce, and because of an alleged defect, causes injury in Nevada to the plaintiff." (emphasis added)).

This court has not found any Nevada case on point dealing specifically with N.R.S. § 14.080's applicability to product retailers. However, the literal language of the statute appears to encompass them. The statute expressly embraces a "corporation," who although does not manufacture a product, "otherwise supplies directly or *indirectly* any product for . . . sale or use" in Nevada. N.R.S. § 14.080(1). Thus, under the literal language of § 14.080, it does not appear to matter whether Fox Five was the manufacturer of the aircraft at issue or merely a downstream retailer. The statute encompasses manufactures and suppliers alike.

This, however, is not the end of the personal jurisdiction inquiry. Regardless of how broad the construction of a state's long-arm statute, the state statute can never confer personal jurisdiction beyond the limits imposed by the U.S. Constitution. *See Data Disc,* 557 F.2d at 1286. Nevada courts have recognized this constitutional limitation on the state's long-arm statutes. *See Judas Priest v. Second Judicial Dist. Court,* 104 Nev. 424, 426, 760 P.2d 137 (1988) (stating that Nevada's long-arm statutes reach only so far as the limits of due process as set by the Constitution).

The remaining personal jurisdiction analysis under Nevada's long-arm statute— e.g., whether Fox Five reasonably may have expected the aircraft to enter Nevada—collapses into a single inquiry of whether the exercise of that jurisdiction comports with the defendant's constitutional due process rights. *See Abbott–Interfast Corp. v. Eighth Judicial Dist. Court,* 107 Nev. 871, 872–73, 821 P.2d 1043 (1991) (analyzing personal jurisdiction in a products liability case in terms of constitutional due process principles without reference to Nevada's products liability long-arm statute). Because the reach of N.R.S. § 14.080 is coextensive with the outer limits of federal due process, this court will now turn to whether the exercise of personal jurisdiction over Fox Five comports with the defendant's due process rights.

## B. Due Process

While this court is bound to follow the Nevada Supreme Court's interpretation of the state's long-arm statute, the due process question is a matter of federal law. *Data Disc,* 557 F.2d at 1286–87 n. 3. Thus, the Nevada Supreme Court's interpretation of the due process question is not controlling on this court, although it may be viewed as persuasive authority. Under federal law,

> [d]ue process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1485 (9th Cir.1993) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

There are two types of personal jurisdiction that a court may exercise over a nonresident defendant. A court may exercise "general jurisdiction" over a nonresident defendant, even if "the cause of action does not arise out of or relate to the [nonresident defendant's] activities in the forum State," when the nonresident defendant's activities within the state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A., v. Hall,* 466 U.S. 408, 414–15, 415 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984); *see also Pacific*

*Atlantic Trading,* 758 F.2d at 1327; *Data Disc,* 557 F.2d at 1287. It is evident in this case that Fox Five does not conduct substantial or continuous and systematic activities in the State of Nevada. Plaintiffs' complaint does not allege facts showing that the defendant's activities in the forum state even approach those of the defendant in *Helicopteros, supra,* which were held to be insufficient to confer general jurisdiction.

■ Therefore, this court must determine whether the defendant has "minimum contacts" with the forum of Nevada sufficient to subject it to "specific jurisdiction." *Core–Vent,* 11 F.3d at 1485. Specific jurisdiction, which is sometimes referred to as limited jurisdiction, may lie even when a nonresident defendant's activities are not so pervasive as to subject him to general jurisdiction. *Data Disc,* 557 F.2d at 1287. However, "the issue of whether [specific] jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts *in relation to the cause of action."* *Id.* (emphasis added). The Ninth Circuit analyzes whether a nonresident defendant has sufficient "minimum contacts" with the forum state by applying the following three-prong test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) The claim must be one which *arises out of* or results from the defendant's forum-related activities.

(3) Exercise of jurisdiction must be *reasonable.*

*Core–Vent,* 11 F.3d at 1485 (citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)) (emphasis added); *see also Data Disc,* 557 F.2d at 1287 (citations omitted).

The seminal case for contested personal jurisdiction in products liability actions is the U.S. Supreme Court's decision in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World–Wide Volkswagen,* the issue was whether "an Oklahoma court [could] exercise *in personam* jurisdiction over a nonresident automobile retailer and its wholesale distributor in a products-liability action, when the defendants' only connection with Oklahoma [was] the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma." *Id.* at 287, 100 S.Ct. at 562. The holding in that case has been widely cited for the proposition that "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the *stream of commerce* with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298, 100 S.Ct. at 567 (emphasis added). In other words, a defendant corporation "purposefully avails" itself of a forum where the defendant places its products into interstate commerce and reasonably foresees that those products will be delivered into the forum.

■ Notwithstanding the broad language of the "stream of commerce" standard, the Court clearly stated that, for purposes of due process analysis, merely placing a product into the "stream of commerce" does not itself give rise to the requisite "expectation" that the product will enter a particular state. The Court specifically stated that " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause[,]' " *Id.* at 295, 100 S.Ct. at 566, precisely because "foreseeability," taken to its logical extremes, would permit every seller of a product to be amenable to suit where ever the product traveled. *Id.* at 296, 100 S.Ct. at 566. Instead, the Supreme Court instructed that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the *defendant's conduct and connection* with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567 (emphasis added). Thus, this court interprets *World–Wide Volkswagen* to stand for the proposition that, in products liability cases, an out-of-state defendant can be found to have purposefully availed itself of the forum only on the basis of its own affirmative

conduct directed at the forum state.[2] *See id.* at 297–98, 100 S.Ct. at 567 (stating that the forum's exercise of personal jurisdiction over a non-resident defendant is reasonable where the sale of a product "is not simply an isolated occurrence, but arises from the efforts of the ... distributor to serve, directly or indirectly, the [forum] market").

This interpretation of *World–Wide Volkswagen* is consistent with Ninth Circuit precedent. In *Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir.1986), Menlove, a Utah auto dealership, sold an allegedly defective automobile in Utah to Patterson, a used-car dealer. Patterson took the car to California where he resold it to Brand, an Arizona auto dealer. Thereafter, Brand sold the car to a customer in Arizona. When the wheels on the car broke apart, litigation ensued. After the customer obtained a favorable judgment against Brand, the plaintiff sued Menlove and other defendants in a federal district court in California. Menlove moved to quash service of process on the grounds that the court lacked personal jurisdiction. The Ninth Circuit held that the plaintiff did not make out a *prima facie* case of personal jurisdiction over the defendant under the minimum contacts test. *Id.* at 1075. Crucial to the court's holding was the fact that there was no showing that Menlove purposefully directed any affirmative activity into the California forum. Significantly, after discussing *World–Wide Volkswagen*, the court found it lacked personal jurisdiction even though Menlove "knew" the car would be resold in California. *Id.* Thus, the Ninth Circuit rejected the notion that merely placing a product into the stream of commerce with knowledge or awareness that the product would end up in a particular forum, without more, is sufficient for that forum to exercise personal jurisdiction over the defendant. Rather, to make out a *prima facie* case for personal jurisdiction, the plaintiff must point to some *affirmative conduct* by the defendant to deliver its product to the forum. *Id.* at 1074–75; *see also Plant Food Co-op v. Wolfkill*, 633 F.2d 155, 159 (9th Cir.1980) (stating that "[the defendant] engaged in affirmative conduct to deliver its product into Montana.").

In the instant action, Fox Five sold the aircraft at issue on April 1, 1992 to Fighter Pilots USA in Florida. Fighter Pi-

**2.** It is worth noting that the Supreme Court subsequently attempted to clarify the scope of the "stream of commerce" language and its relationship to the "purposeful availment" prong of the minimum contacts test. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). However, no majority in *Asahi* was able to conclusively establish an interpretation of what constituted "minimum contacts" in product liability cases. Instead, *Asahi* was decided on the grounds that subjecting the foreign defendant to jurisdiction in California would violate the "traditional notions of fair play and substantial justice" prong of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Justice Brennan, joined by Justices White, Marshall and Blackmun, concluded that the "stream of commerce" standard in products liability cases should be read as allowing jurisdiction over any manufacturer or retailer which places its product in the stream of commerce and is *aware* that its product may be sold in the forum state. *Id.* at 116–17, 107 S.Ct. at 1034–35 (Brennan, J., concurring in part and concurring in the judgment). Justice O'Connor, joined by Chief Justice Rehnquist and Justices Powell and Scalia, rejected this broad interpretation and concluded that merely placing a product into the stream of commerce with knowledge that it may be swept into a particular forum, without more, is insufficient to find purposeful availment under the minimum contacts test. Instead, these Justices interpreted *World–Wide Volkswagen*'s language as requiring an additional showing of some affirmative act by the defendant purposefully directed at the forum state. *Id.* at 112, 107 S.Ct. at 1032 (O'Connor, J.). Justice Stevens, the swing vote, ultimately joined with Justice O'Connor's opinion to the extent it decided the case on other grounds, but specifically disagreed with Justice O'Connor's treatment of the minimum contacts issue.

Since *Asahi*, the circuits have split over whether the "stream of commerce" standard in *World–Wide Volkswagen* requires a plaintiff to establish jurisdiction in products liability cases by showing affirmative conduct by the defendant purposefully directed at the forum. *See, e.g., Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945–46 (4th Cir.1994) (adopting Justice O'Connor's position), *cert. denied*, 513 U.S. 1151, 115 S.Ct. 1103, 130 L.Ed.2d 1070 (1995); *Boit v. Gar–Tec Products, Inc*, 967 F.2d 671, 682–83 (1st Cir.1992) (same); *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 375 (8th Cir.1990) (same). *Compare Dehmlow v. Austin Fireworks*, 963 F.2d 941, 947 (7th Cir.1992) (adopting Justice Brennan's position); *Irving v. Owens–Corning Fiberglas Corp.*, 864 F.2d 383, 385–86 (5th Cir.1989) (same), *cert. denied*, 493 U.S. 823, 110 S.Ct. 83, 107 L.Ed.2d 49 (1989).

lots USA then sold the aircraft to Desert Aces on June 14, 1994, thereby delivering the aircraft into the Nevada forum. There is no evidence nor suggestion that Fox Five is affiliated with Fighter Pilots USA. Indeed, Fighter Pilots USA owned and presumably operated the aircraft for more than two years before the subsequent sale into Nevada. Based on these facts, it is unreasonable to suggest that Fox Five could foresee or expect that Fighter Pilots USA would sell the aircraft to a Nevada resident. Even assuming that Fox Five anticipated or was aware that, after selling the aircraft to a Florida resident, its customer would then turn around and sell the same aircraft to a Nevada resident two years later, this connection with Nevada is too attenuated to satisfy the purposeful availment prong of the minimum contacts test. Plaintiffs have not shown any affirmative conduct by Fox Five purposefully directing the sale of this aircraft into Nevada.

■ The facts presented here are directly analogous to those presented in *Menlove Dodge,* wherein the court held:

> Because [the defendant] did not engage in affirmative conduct to deliver its product to California, but rather passively made a sale it allegedly knew would affect that state, [the court concludes] that [the defendant] did not direct its activities purposefully at California so as to create a pre-

sumption of reasonableness of jurisdiction in the California courts.

796 F.2d at 1075. The court's holding in *Menlove Dodge* applies here with equal force. The decision to resell the aircraft into Nevada was the "unilateral act of a third party," which cannot be attributed to Fox Five. *Id.* at 1074–75 (citation omitted). This conclusion is further supported by the fact that, unlike the defendant in *Menlove Dodge,* there is no evidence that Fox Five was aware that Fighter Pilots USA would eventually resell the aircraft into Nevada two years after the initial sale.[3] In light of the foregoing analysis, this court finds that Fox Five has not "purposefully availed" itself of the Nevada forum. Plaintiffs have failed to make a *prima facie* showing that Fox Five engaged in some affirmative conduct directed into Nevada in connection with the sale of the aircraft at issue. Thus, personal jurisdiction over the defendant does not lie in this court. Since this court does not have personal jurisdiction over Fox Five, the defendant's Rule 12(b)(2) motion to dismiss will be granted.

As a final matter, the plaintiffs request, should the court find that *prima facie* case for personal jurisdiction is not met, that the court order additional discovery and allow the parties to submit additional jurisdictional facts to supplement the affidavits already filed. Specifically, the plaintiffs assert that additional discovery may reveal two things: (1) whether Fox Five has sold other aircraft

---

3. The court recognizes that Nevada case law is not binding on the court's due process determination. However, in a diversity action, the court may look to the law of the state in which it sits as persuasive authority. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.,* 557 F.2d 1280, 1286 n. 3 (9th Cir.1977). This would be appropriate in this action since the court ultimately is construing Nevada's long-arm statute. To that effect, the court's conclusion today is supported by Nevada case law.

In *Wilmack, Inc. v. Second Judicial Dist. Court,* 97 Nev. 547, 635 P.2d 296 (1981), the plaintiff was involved in a traffic accident in California, sustaining injuries allegedly caused by the installation of a defective "Baja Bug Kit." While not expressly stated in the opinion, the court presumed that the kit's out-of-state manufacturer initially sold the kit outside Nevada. The kit was purchased subsequently through a Nevada retailer and installed by a Nevada auto shop at the request of the car's previous owner. The plain-

tiff, presumably the second owner, sued the manufacturer of the kit in Nevada. The Nevada Supreme Court held: "Here, although it can be inferred that the kit was sold indirectly to a Nevada business, there is no assertion that [the defendant manufacturer] took part in, was aware of, or should have foreseen that transaction. [citation omitted]. The complaint simply fails to allege actions taken by the [defendant manufacturer] with relation to this forum which would make our exercise of jurisdiction reasonable under federal standards." *Id.* at 549, 635 P.2d 296. Thus, even the Nevada courts have found that where an out-of-state manufacturer indirectly sells its product into Nevada, the exercise of personal jurisdiction over that defendant does not comport with constitutional due process where the defendant takes no part in, is not aware of and does not foresee the transaction which ultimately delivers the product into the forum.

to Nevada residents, and (2) whether Fox Five advertises in a nationally distributed publication which allegedly is circulated in Nevada. On these bases, the court does not find that additional discovery will alter the personal jurisdiction analysis in this case. First, even assuming Fox Five has sold other aircraft into Nevada, such a showing would not confer general jurisdiction. *See Menlove Dodge,* 796 F.2d at 1073 (citing numerous cases and stating that the "substantial" or "systematic and continuous" contacts test for general jurisdiction is intended to be a fairly high standard—occasional sales into the forum are insufficient to satisfy that test). Furthermore, whether Fox Five sold other aircraft to Nevada residents is irrelevant for purposes of specific jurisdiction. The specific jurisdiction analysis turns on "an evaluation of the nature and quality of the defendant's contacts *in relation to the cause of action." Data Disc,* 557 F.2d at 1287. Again assuming that the defendant sold other aircraft into Nevada, none of these other aircraft are even remotely connected to the plaintiffs' causes of action.

 Second, the Ninth Circuit has held that merely advertising in a national publication with circulation in the forum state does not support specific jurisdiction. *See Kransco Manufacturing, Inc. v. Markwitz,* 656 F.2d 1376, 1379–80 (9th Cir.198 1) (citing *Cascade Corp. v. Hiab–Foco AB,* 619 F.2d 36 (9th Cir.1980)); *see also Reyes v. Riggs,* 878 F.2d 386, 1989 WL 71456 at *2 (9th Cir.1989) (unpublished disposition). Advertising to the nation in general is not consistent with the specific targeting activity required to find that the defendant purposefully availed itself of the Nevada forum. While it is true that the solicitation of business in the forum state will generally be considered purposeful availment if it results in contract negotiations or the transaction of business, *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988), there is no allegation in plaintiffs' complaint that the presence of the aircraft in the Nevada forum was the culmination of any negotiations or business transactions arising out of Fox Five's national advertising. Indeed, Desert Aces purchased the aircraft from Fighter Pilots USA. It cannot be asserted seriously

that this transaction, which was consummated between Desert Aces and a third party to this action, arose out of Fox Five's own advertising efforts.

### III. Conclusion

Based on the foregoing,

IT IS HEREBY ORDERED that the defendant's motion to dismiss for lack of personal jurisdiction (# 12) is GRANTED.

IT IS FURTHER ORDERED that plaintiffs' request for oral argument on the defendant's motion to dismiss (# 17) is DENIED.