**Eric M. ROLL, Plaintiff,**

v.

**TRACOR, INC., Tracor Aerospace, Inc., Tracor Applied Sciences, Inc., Tracor Flight Systems, Inc., "John Does Corp.," and/or "John Doe Company, Inc.," Defendants.**

No. 96–CV–757C(M).

United States District Court, W.D. New York.

Sept. 18, 1998.

Gary Logan, Las Vegas, NV, for Plaintiff.

Gendry & Sprague, P.C. (Ron A. Sprague, of counsel), San Antonio, TX, for Defendants.

Cherundolo, Bottar & McGowan (James H. McGowan, of counsel), Syracuse, NY, for Defendants.

## DECISION and ORDER

CURTIN, District Judge.

Before the court is plaintiff's motion to transfer venue to the United States District Court for the District of Nevada (Item 19). Defendants have responded with a cross-motion to dismiss or, in the alternative, transfer venue to the United States District Court for the Western District of Texas (Item 26). The court heard oral argument via telephone on July 10, 1998.

## BACKGROUND

The events giving rise to this cause of action occurred on November 16, 1994, when plaintiff Eric Roll was on duty as a Third Level Airman enlisted in the United States Air Force and was severely burned by MJU–7/B flare(s) that suddenly ignited. Plaintiff alleges that defendants Tracor, Inc., Tracor Aerospace, Inc., Tracor Applied Sciences, Inc., Tracor Flight Systems, Inc., and John Doe Corp., and/or John Doe Company, Inc., were somehow involved in the manufacture, design, and/or distribution of the MJU–7/B flare(s) to the United States Air Force which caused plaintiff's injuries.

On November 7, 1996, plaintiff commenced this action by filing a complaint in the United States District Court for the Western District of New York (Item 1). Plaintiff alleges six different causes of action: (1) negligence; (2) strict liability; (3) breach of implied warranties; (4) failure to warn; (5) breach of express warranty; and (6) wanton and reckless conduct. Jurisdiction is founded on diversity of citizenship and amount pursuant to 28 U.S.C. § 1332(a). Defendants Tracor, Tracor Aerospace, Inc., Tracor Applied Sciences, Inc., and Tracor Flight Systems, Inc., answered on November 27, 1997 (Item 3). As their second affirmative defense, defendants plead that the court lacks personal jurisdiction over them (*Id.,* ¶ 10).

On January 20, 1998, defendants filed their "first" motion for summary judgment (Item 10). On March 9, 1998, defendants filed their "second" motion for summary judgment (Item 15). On April 2, 1998, plaintiff filed this motion to transfer venue to the United States District Court for the District of Nevada (Item 19). At approximately the same time, on April 6, 1998, plaintiff filed a stipulation to change attorneys from John Ballow, Esq., of Buffalo, New York, to Gary Logan, Esq., of Las Vegas, Nevada, with Paul Cambria, Esq., and Barry Covert, Esq., of Buffalo, New York, as local counsel (Items 21 and 22).

After reviewing the record and conferring with the parties, the court decided to address the motion to transfer venue first (Item 19).

## DISCUSSION

I. *Transfer pursuant to 28 U.S.C. § 1404 or § 1406?*

Plaintiff argues that this case should be transferred to Nevada, "the venue where this action should have been filed initially" (Item 19, pg. 1). Plaintiff notes that the primary motivation behind the filing of this case in the Western District of New York appeared to be the convenience of plaintiff's former counsel. Plaintiff was originally from Buffalo, which is within the Western District of New York, and his stepmother worked at a local law firm. Plaintiff notes that his former counsel failed to recognize that venue is no longer determined by the residence of the plaintiff. Plaintiff admits that the filing of this action in the Western District of New York was improper, but argues that transfer to Nevada is proper pursuant to 28 U.S.C. § 1404.

28 U.S.C. § 1404, "Change of Venue," provides in pertinent part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "It presupposes that the action has been brought in a proper venue but authorizes its transfer to another district, also proper, but also more suited to the convenience of witnesses and needs of jus-

tice." David D. Siegel, Commentary on 1996 Amendment of Section 1404. Plaintiff argues that venue and jurisdiction are proper in the Western District of New York because: (1) defendants have waived the defense of improper venue because they did not raise this defense in their answer and (2) although defendants raised the defense of personal jurisdiction in their answer, they waived this defense when they filed two separate motions for summary judgment.

Although defendants extensively argued in their briefs that this case should be dismissed or transferred pursuant to 28 U.S.C. § 1406,[1] defendants' counsel conceded at oral argument that defendants had waived their defenses of lack of personal jurisdiction (Item 31, Transcript of July 10, 1998 Oral Argument, at 9–10, 35–36) and improper venue (*Id.* at 11, 35–36). The defense of personal jurisdiction was waived when defendants filed their "first" motion for summary judgment on January 20, 1998. Fed.R.Civ.P. 12(h)(1). The defense of improper venue was waived because defendants failed to include this defense in their answer. *Id.*

Therefore, since the parties stipulate that venue and jurisdiction are proper in the Western District of New York for the purposes of this motion, the court addresses plaintiff's motion to transfer venue and defendants' cross-motion to transfer venue under 28 U.S.C. § 1404. *See Newell Co. v. Lee,* 950 F.Supp. 864, 869 (N.D.Ill.1997) (venue proper in transferor district court because defendant consented to venue and personal jurisdiction in the state and federal courts in Illinois). Further, at oral argument, defendants' counsel conceded that "the proper transfer statute would be 1404(a)." (Item 31, Transcript of Oral Argument, at 11).

## II. *Transfer Pursuant to 28 U.S.C. § 1404*

Plaintiff argues that Nevada is the only district where venue is proper for this action, while defendants maintain that the Western District of Texas is the only proper venue. Defendants maintain that the District Court for the District of Nevada does not have personal jurisdiction over them and that the corporation which manufactured the flares is now bankrupt and that they are not liable under the doctrine of successor liability because plaintiff has not pled successor liability.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)).

"The inquiry on a motion to transfer is two-fold: first, whether the action sought to be transferred is one that 'might have been brought' in the transferee court; and second, whether, considering the 'convenience of parties and witnesses' and 'the interest of justice,' a transfer is appropriate." *Lencco Racing Co., Inc. v. Arctco, Inc.,* 953 F.Supp. 69, 71 (W.D.N.Y.1997).

### A. *Might the action have been brought in Nevada?*

#### 1. Venue

To determine whether venue was proper in Nevada at the time of the filing of the complaint, 28 U.S.C. § 1391, "Venue generally," provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

---

**1.** 28 U.S.C. § 1406, "Cure or waiver of defects," provides in pertinent part: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Here, it is clear under § 1391(a)(2) that venue would have been proper in Nevada at the time of the filing of the complaint because the accident which gave rise to the claim occurred in Nevada.

### 2. Jurisdiction

■ A federal court in a diversity action is able to assert personal jurisdiction over a nonresident defendant only if: (1) the state has a long-arm statute which confers personal jurisdiction over the defendant and (2) the assertion of such jurisdiction is consistent with principles of due process. *Arrowsmith v. United Press International,* 320 F.2d 219, 222–223 (2d Cir.1963) (en banc); *see also Abraham v. Agusta, S.P.A.,* 968 F.Supp. 1403, 1406 (D.Nev.1997).

#### a. Long-arm jurisdiction

#### i. Nevada's long-arm statute

Nevada's products liability long-arm statute, NRS § 14.080, "Service of process on foreign manufacturers, producers and suppliers of products," provides:

1. Any company, firm, partnership, corporation or association created and existing under the laws of any other state, territory, foreign government or the Government of the United States, which manufactures, produces, makes, markets, or otherwise supplies directly or indirectly any product for distribution, sale or use in this state may be lawfully served with any legal process in any action to recover damages for an injury to a person or property resulting from such distribution, sale or use in this state by mailing to the last known address of the company, firm, partnership, corporation or association, by registered or certified mail return receipt requested, a copy of the summons and a copy of the complaint.

"This court is bound by the interpretation given to § 14.080 by the Nevada Supreme Court." *Abraham,* 968 F.Supp. at 1406. The Nevada Supreme Court has given a broad interpretation to its long-arm statute in *Metal–Matic, Inc. v. Eighth Judicial District Court In and For Clark County,* 82 Nev. 263, 415 P.2d 617 (1966) and its progeny. In *Metal–Matic,* the Nevada Supreme Court held that it had jurisdiction over a company which allegedly manufactured a defective boat railing in Minnesota that caused injury in Nevada. The manufacturer of the boat railing argued that the Nevada courts did not have personal jurisdiction over it because it had not directly or indirectly solicited business in Nevada. The railing manufacturer argued that it sold the railing to a Minnesota boat manufacturer, who in turn installed it on a boat in Minnesota, who then sold it to a distributor in Nevada, who in turn sold it to the consumer, whose father drowned when the defective rail gave way on Lake Mead in Nevada. The railing manufacturer argued that when it sold the railing it could not possibly foresee that the railing would end up in Nevada.

■ In ruling, the Nevada Supreme Court stated that "NRS 14.080 specifically provides for service of process upon a foreign corporation whose product has caused 'injury ... in this state.'" *Id.* at 266–67, 415 P.2d 617. The Nevada Supreme Court reasoned that NRS § 14.080 was modeled after the Illinois and New York statutes and that because the "tortious act" occurred within the state of Nevada, the injury occurred there. *Id.* Thus, "it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this state." *Id.* Here, defendants allegedly manufactured, produced, made, marketed, or otherwise supplied indirectly the flares which caused the injury to plaintiff in Nevada. Under *Metal–Matic* and its progeny, it is clear that Nevada's long-arm statute encompasses defendants and authorizes this court to exercise personal jurisdiction over them.

#### ii. Successor Liability

Defendants argue that this court does not have jurisdiction over them because none of the defendants in this case manufactured, sold, or delivered the flares in question. Defendants support this argument with an affidavit from Morris Creel, currently a Vice President for Tracor Aerospace, Inc., a subsidiary of Tracor, Inc. (Item 27, Exh. A). Creel is now in charge of the facility which

allegedly manufactured the MJU–7/B countermeasure flares at issue and currently maintains the production records for those flares (*Id.*). Creel's affidavit states that the flares in question which allegedly injured plaintiff were manufactured in 1988 by predecessor corporations to the current defendant Tracor Aerospace, Inc. (*Id.*). Creel states these predecessor manufacturers dissolved during Chapter 11 bankruptcy proceedings in 1991 (*Id.*).

Defendants also submit an affidavit from Carla Marshall, currently employed as Assistant Corporate Secretary by Tracor, Inc., to explain "the corporate structure and corporate history of Tracor, Inc. and its subsidiaries and related companies." (Item 27, Exh. F). According to Marshall, Tracor, Inc., is an active Delaware Corporation, qualified to do business in Texas as of December 18, 1991 (*Id.*). Prior to 1991, there was a Texas corporation that was, at one time, called Tracor, Inc. (*Id.*). That corporation came into existence as Associate Consultants and Engineers, Inc., when it was incorporated in Texas on July 15, 1955 (*Id.*). It changed its name to Texas Research Associates Corporation on September 27, 1956, and again to Tracor, Inc., on March 14, 1962 (*Id.*).

On June 1, 1973, a Delaware corporation was formed called Delaware Tracor Corporation (*Id.*). On June 20, 1973, Tracor Delaware Corporation merged with Tracor, Inc. (*Id.*). The surviving corporation was a Delaware corporation which then changed its name to Tracor, Inc., on July 13, 1973 (*Id.*).

Tracor Aerospace Austin, Inc., was incorporated in Texas on March 25, 1983 (*Id.*). It was a wholly owned subsidiary of Tracor, Inc. (*Id.*). Tracor Aerospace Austin changed its name to Tracor Aerospace, Inc., on September 11, 1986 (*Id.*).

Tracor Applied Sciences Divisions, Inc., was incorporated in Texas on March 31, 1983, as a wholly owned subsidiary of Tracor, Inc. (*Id.*). Tracor Applied Sciences Divisions, Inc., changed its name to Tracor Applied Sciences, Inc., on May 12, 1983 (*Id.*).

Flight Systems, Inc., was a California corporation which qualified to do business in Texas on February 28, 1977 (*Id.*). It changed its name to Tracor Flight Systems, Inc., on November 9, 1990 (*Id.*).

In 1991, Tracor, Inc., Tracor Aerospace, Inc., Tracor Applied Sciences, Inc., and Tracor Flight Systems, Inc., all filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Western District of Texas (*Id.*).

In the course of the bankruptcy proceedings, Tracor, Inc., Tracor Aerospace, Inc., Tracor Applied Sciences, Inc., and Tracor Flight Systems, Inc., changed their names to O.T.C. Tracor, Inc., O.T.C. Tracor Aerospace, Inc., O.T.C. Tracor Applied Sciences, Inc., and O.T.C. Tracor Flight Systems, Inc., respectively (*Id.*). A new Delaware Corporation named Tracor, Inc., was incorporated on November 25, 1991 (*Id.*). That Tracor, Inc., purchased certain assets and executory contracts from O.T.C. Tracor, Inc., through the United States Bankruptcy Trustee before O.T.C. Tracor, Inc., was dissolved (*Id.*).

On December 30, 1991, O.T.C. Tracor, Inc., and O.T.C. Tracor Flight Systems, Inc., withdrew from doing business in Texas (*Id.*). That same day, O.T.C. Tracor Aerospace, Inc., and O.T.C. Tracor Applied Sciences, Inc., were dissolved (*Id.*). The bankruptcy proceedings were concluded, and O.T.C. Tracor, Inc., O.T.C. Tracor Aerospace, Inc., O.T.C. Tracor Applied Sciences, Inc., and O.T.C. Tracor Flight Systems, Inc., were discharged from all liabilities, debts, and claims (*Id.*). Marshall notes that the new Tracor, Inc., and Tracor Aerospace, Inc., did not assume, purchase, or become responsible for any of the debts or claims against the discharged companies except on the executory contracts assigned to them (*Id.*).

Based on the foregoing, defendants argue that after the bankruptcy proceedings were concluded, O.T.C. Tracor, O.T.C. Tracor Aerospace, O.T.C. Tracor Applied Sciences, and O.T.C. Tracor Flight Systems, were discharged from all debts, liabilities, and claims. Thus, defendants argue that the Nevada courts do not have personal jurisdiction over them.

In response, plaintiff argues that the defendants are true successors-in-interest to the manufacturers of the flares, and that

Tracor and its subsidiaries are nothing more than reorganized versions of the corporations that manufactured the flares which are the subject of this litigation. Plaintiff argues that defendants purchased the assets of the dissolved corporations and continued business without interruption. Plaintiff alleges that after reorganization in 1991, the successor corporations continued to produce flares at the same plant in Arkansas, using the same employees, officers, and directors. They also continued to exploit the goodwill and trade names of their predecessors. Thus, plaintiff argues that this case is a paradigm for the "mere continuation" exception to the general rule of nonliability for successor corporations.

In ruling, the court notes that "[a] number of courts have recognized the importance of national uniformity and applied traditional rules of successor liability, rather than the successor liability law of a given state." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 519 (2d Cir.1996), *cert. denied*, ——— U.S. ———, 118 S.Ct. 2318, 141 L.Ed.2d 694 (1998) (citing *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263 n. 2 (9th Cir.1990)). Under traditional rules of successor liability, a purchasing company will be liable for the obligations of its predecessor if one of the following four exceptions applies:

> the successor expressly or impliedly agrees to assume them; the transaction may be viewed as a de facto merger or consolidation; the successor is a "mere continuation" of the predecessor; or the transaction is fraudulent.

*B.F. Goodrich*, 99 F.3d at 519; *see also Louisiana–Pacific Corp.*, 909 F.2d at 1263.

■ Here, for the purposes of this motion, plaintiff's argument that Tracor, Inc., Tracor Aerospace, Inc., Tracor Applied Sciences, Inc., and Tracor Flight Systems, Inc., are a mere continuation of the dissolved Tracor/O.T.C. Tracor, Tracor Aerospace/O.T.C. Tracor Aerospace, Tracor Applied Sciences/O.T.C. Tracor Applied Sciences, and Tracor Flight Systems/O.T.C. Tracor Flight Systems has merit. Despite the bankruptcy, defendants Tracor, Tracor Aerospace, Tracor Applied Sciences, and Tracor Flight Systems continued their business without interrup-

tion, the successor corporations continued to produce flares at the same plant in Arkansas, using the same employees, officers, and directors. Further, defendants' submission of the affidavit of Morris Creel lends credence to the "mere continuation" theory because Creel states in his affidavit that he was formerly employed by O.T.C. Tracor before bankruptcy and now is employed by Tracor Aerospace after it was formed as part of the Chapter 11 Reorganization which took place (*See* Item 27, Exh. A).

### iii. Product Liability Exception

In addition to its successor liability arguments, plaintiff argues that there is another exception to the general rule of nonliability of successor corporations—the "product line" or "product liability" exception. While the Nevada Supreme Court has never had occasion to consider this exception, plaintiff argues that it would follow the holding of the California Supreme Court on the issue, because the Supreme Court of Nevada has adopted virtually every holding of the California Supreme Court in the area of strict liability in tort.

As explained by the Ninth Circuit, California, like many other jurisdictions, applies a rule of product-line successor liability:

> Under this theory, a purchaser of substantially all assets of a firm assumes, with some limitations, the obligation for product liability claims arising from the selling firm's presale activities. *Liability is transferred irrespective of any clauses to the contrary in the asset purchase agreement.*

*Northern Insurance Co. New York v. Allied Mutual Ins. Comp.*, 955 F.2d 1353, 1357 (9th Cir.), *cert. denied*, 505 U.S. 1221, 112 S.Ct. 3033, 120 L.Ed.2d 903 (1992) (emphasis added). Were Nevada to follow its previous precedent and rule on product-line successor liability, arguably defendants would be held liable under this exception as well.

### iv. Conclusion

■ Defendants' argument that they are not liable under a theory of successor liability because plaintiff did not plead such theory of liability has no merit. The allega-

tions in plaintiff's complaint are against Tracor, *"its predecessors or successors."* (*See* Item 1, ¶¶ 8–17, 21). Furthermore, defendants have waived any failure of plaintiff to plead this issue because defendants have not themselves raised successor liability as an affirmative defense nor did they file a pre-answer motion to dismiss.

Based on the foregoing, the Nevada courts have jurisdiction over the defendants.

### b. Due Process

▮ Nevada's long-arm statute reaches only so far as the limits of due process set by the Constitution. *Judas Priest v. Second Judicial Dist. Court,* 104 Nev. 424, 426, 760 P.2d 137 (1988). Thus, the court must analyze whether the exercise of jurisdiction comports with the defendants' constitutional due process rights. *Abraham,* 968 F.Supp. at 1407.

"While this court is bound to follow the Nevada Supreme Court's interpretation of the state's long-arm statute, the due process question is a matter of federal law." *Abraham,* 968 F.Supp. at 1407. "Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citations omitted)).

▮ There are two types of jurisdiction that a court may exercise over a nonresident defendant: (1) general jurisdiction or (2) specific jurisdiction. *Abraham,* 968 F.Supp. at 1407. Under general jurisdiction, a foreign corporation may be subject to the forum's reach if its activities there are "substantial" or "continuous and systematic," even if these activities do not relate to the cause of action. *Helicopteros,* 466 U.S. at 414–15, 104 S.Ct. 1868. Here, it is evident that defendants do not conduct substantial or continuous and systematic activities in the State of Nevada.

▮ When the defendants activities in the state are insufficient to justify the assertion of general jurisdiction by the forum, the court must analyze the nature and quality of the contacts that relate to the cause of action to determine whether the defendants have "minimum contacts" with the State of Nevada sufficient to subject them to specific jurisdiction. *See Rano v. Sipa Press, Inc.,* 987 F.2d 580, 588 (9th Cir.1993).

To determine whether a nonresident defendant has sufficient "minimum contacts" with the forum state, the Ninth Circuit applies the following three-part test:

> "(1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable."

*Core–Vent Corp. v. Nobel Industries AB,* 11 F.3d 1482, 1485 (9th Cir.1993) (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)).

Regarding the first part of the test, the seminal case for contested personal jurisdiction in products liability actions is *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World–Wide,* the Supreme Court held that the automobile dealer and wholesale distributor were beyond the Oklahoma Court's jurisdiction because both were near the end of the car's chain of distribution. *World–Wide,* 444 U.S. at 295, 100 S.Ct. 559. However, the Supreme Court implied that jurisdiction over the car's manufacturer and importer, who did not contest jurisdiction, would have been proper. *Id.* at 297–98, 100 S.Ct. 559. Thus, "a product's manufacturer and primary distributors may be amenable to a forum's jurisdiction even though secondary distributors and retailers as in *World–Wide Volkswagen* are not." *Myers v. Johns Manville Sales Corp.,* 600 F.Supp. 977, 985 (D.Nev.1984).

■ Here, the countermeasure flares that are the subject of this litigation purportedly were manufactured by defendants. Plaintiff argues that Tracor and its subsidiaries provide numerous products and services to the United States Air Force and other branches of the military. The Department of Defense is Tracor's largest single customer. Plaintiff maintains that Tracor is only one of four companies which manufacture the MJU–7/B countermeasure flares which are the subject of this litigation.

While defendants argue that they have not purposefully directed their activities toward Nevada as required by the Supreme Court in *Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), *Asahi* is distinguishable from the case at bar. *Asahi* concerned an indemnification action by Cheng Shin, a Taiwanese manufacturer of the defective motorcycle tire tube at issue, against Asahi, the Japanese manufacturer of the tube's valve assembly. The Supreme Court held that the California Courts did not have jurisdiction over Asahi "[c]onsidering the international context, the heavy burden on the alien [Japanese] defendant, and the slight interests of the plaintiff [Taiwanese] and the forum state [over an indemnification action]." *Asahi,* 480 U.S. at 116, 107 S.Ct. 1026. Further, the Court stated that "[t]here is no evidence that Asahi designed its product in anticipation of sales in California." *Id.* at 113, 107 S.Ct. 1026.

In contrast, in the case at bar, plaintiff notes that Nellis Air Force Base, Nevada, the situs of the events giving rise to this litigation, is the home of the USAF "Fighter Weapons School." Plaintiff states that it is the largest USAF tactical fighter base in the world. Every USAF fighter pilot must complete the fighter weapons school at Nellis. As a consequence, Nellis is the largest single user of countermeasure flares of any USAF base. As such, plaintiff argues that defendants have been aware for many years that their flares have been distributed nationally by the Department of Defense and that it is reasonable that they anticipate being subject to suit in any forum where their countermeasure flares are utilized. Plaintiff states

that this is especially true in Nevada, where plaintiff contends that "more countermeasure flares are handled and utilized on a daily basis than any other place on earth."

Although plaintiff makes these arguments about the prevalent use of countermeasure flares in Nevada in his memorandum of law and does not provide affidavits in support, the court sees no reason to question the fact that these countermeasure flares are used in Nevada, the situs of the accident giving rise to this controversy. In addition, one of the defendants, Tracor Flight Systems, Inc., was qualified to do business in Nevada at the time of the accident (Item 27, Exh. B and D). Based on the above, the court finds that defendants have purposefully availed themselves of the privilege of acting in Nevada, and thus the first part of the specific jurisdiction test is satisfied.

■ The second part of the test is that the claim must arise out of or result from the defendants' forum-related activities. *Core-Vent Corp.,* 11 F.3d at 1485. The court finds that this part is satisfied because plaintiff suffered personal injury in Nevada while handling allegedly defective products manufactured and distributed by the defendants.

■ The third part of the test is that the assertion of jurisdiction must be reasonable. *Id.* Plaintiff argues that it is certainly reasonable for a Nevada court to assert personal jurisdiction over a defendant who should reasonably expect that its countermeasure flares may injure persons living and working in Nevada where many of these flares are being handled and used on a daily basis. In *Myers,* the district court held that:

When a defendant manufacturer or primary distributor places a defective product into the stream of commerce by means of a distribution scheme that encompasses the forum state and the defendant is aware of the scheme, and if the product causes injury in that state as a result of an alleged defect in the product, the forum state can render a judgment against the corporate defendant entitled to full faith and credit elsewhere.

*Myers,* 600 F.Supp. at 986. Based on the foregoing, plaintiff meets the third part of the test.

In sum, defendants have sufficient minimum contacts with Nevada pursuant to the Ninth Circuit's test for specific jurisdiction. Therefore, the court finds that both venue and jurisdiction were proper in Nevada at the time of the filing of the complaint.

B. Is transfer appropriate considering the convenience of the witnesses and the interest of justice?

■■■ In deciding whether to grant a transfer,

> The Court must weigh a number of factors, including: the plaintiff's choice of forum; the place where the operative facts underlying the action occurred; the convenience and relative means of the parties; the convenience of material witnesses; the availability of process to compel the attendance of unwilling witnesses; the relative ease of access to sources of proof; the forum's familiarity with the governing law; trial efficiency; and the interests of justice.

*Cerasoli v. Xomed, Inc.,* 952 F.Supp. 152, 154 (W.D.N.Y.1997). Applying these factors to the case at bar, the court finds that it is in the interest of justice and for the convenience of the parties and witnesses to transfer this case to the United States District Court for the District of Nevada. First, as to the locus of operative facts, the event which gave rise to this controversy—the explosion of the flares which caused plaintiff's injuries—occurred in Nevada. Second, plaintiff has listed numerous witnesses and treating physicians who are located in Nevada. While defendants point out that some physicians, some witnesses, and some documents are in Texas, the discussion below, Part C, *infra,* demonstrates that venue is not proper in Texas. Accordingly, given that numerous factors point toward proper venue in Nevada, it is in the interest of justice to transfer this case to Nevada.

C. Might the action have been brought in Texas?

1. Venue

■■■ Plaintiff argues that venue was not proper in Texas at the time of the filing under 28 U.S.C. § 1391 because all of the defendants did not reside in Texas when the actions giving rise to the complaint occurred. At the time that this action was filed, all of the defendants were Delaware Corporations (Item 27, Exh. F). Tracor, Inc., and Tracor Aerospace, Inc., had their principal place of business in Texas. Tracor Applied Sciences, Inc., had its principal place of business in Maryland (Item 27, Exh. C). Tracor Flight Systems, Inc., had its principal place of business in California and was qualified to do business in Nevada in 1996 (Item 27, Exh. B and D).

An analysis under 28 U.S.C. § 1391(a)(1) reveals that venue is not proper in Texas because all of the defendants do not reside in the same state. Venue is not proper in Texas under section 1391(a)(2) because a substantial part of the acts or omissions giving rise to this litigation occurred in Nevada, not Texas. Finally, section 1391(a)(3) "is available only 'if there is no district in which the action may otherwise be brought.'" David Siegel, Commentary on 1995 Revision of Subdivision(a), Clause (3). As the discussion above clearly indicates, this action may also be brought in Nevada.

Accordingly, venue is not proper in the Western District of Texas. Therefore, the court need not address whether the District Court for the Western District of Texas has jurisdiction over the defendants.

### CONCLUSION

Based on the foregoing, plaintiff's motion to transfer venue to the United States District Court for the District of Nevada is granted. Defendants' cross-motion to dismiss is denied, and defendants' cross-motion to transfer venue to the United States District Court for the Western District of Texas is denied.

So ordered.